## THE HOBOKEN BUILDING ASSOCIATION *vs.* MARTIN and wife.

A contract is not void because the corporation with which it is made is misnamed therein.

Where the complainant, being a corporation, sues by a wrong name, the bill may be amended, in this respect, at the hearing.

The stockholders compose the corporation, and a mere failure to elect officers at the time designated will not work a dissolution.

The complainants, a building association, received from the defendant his bond and mortgage, reciting that he was a shareholder in said building association, and had agreed to accept, and had received from said corporation $400 at the date of the bond, "upon and for the redemption of

number 69, being the sum lent or offered to be received by him therefor."
The condition of the bond was as follows: "Now, if the said A. W. M.,
&c., shall pay to the said H. B. Association, number one, upon said share,
the sum of $7, on the third Monday of each month thereafter, for the
period of ten years from the date hereof, or until the surplus assets of
said corporation shall be sufficient, over and above all its debts and lia-
bilities, to pay on each unredeemed share, to the holder thereof, the sum
of $8," &c.    *Held*—

1st. That the failure of other shareholders to pay their monthly dues af-
forded no defence to a suit for the foreclosure of said mortgage.

2d. That the contract was in accordance with the charter of the corpora-
tion, and was not usurious.

3d. That an agreement made by all the parties in interest that the affairs
of the company should be wound up, and that the owners of the unre-
deemed shares should receive the sums they had advanced with interest,
and that the owners of the redeemed shares who had given mortgages for
the price of redemption should be discharged upon paying the amount of
their mortgages with interest was valid, and should be enforced.

---

*Zabriskie,* for complainants.

*Lyons* and *Weart,* for defendants.

THE CHANCELLOR. The complainants are a corporation,
organized under the provisions of the "act to encourage
the establishment of mutual loan and building associa-
tions," approved February 28th, 1849, (*Nix. Dig.* 84). The
bill is filed to foreclose a mortgage given by the defend-
ant, a member of the association, to secure the payment
of a bond, made pursuant to the provisions of the consti-
tution and by-laws of the association.

The bond recites that the obligor is a shareholder in
said building association, and has agreed to accept, and
has received from said corporation, the sum of four hun-
dred dollars, at the date of the bond, "upon and for the
redemption of number 69, being the sum lent or offered
to be received by him therefor." The condition of the
bond is as follows: "Now if the said Adolphe W. Martin,
his heirs, executors, administrators, or assigns, shall pay
to the said the Hoboken Building Association, number
one, upon said share, the sum of seven dollars on the

third Monday of each month thereafter for the period of ten years from the date hereof or until the surplus assets of said corporation shall be sufficient, over and above all its debts and liabilities, to pay on each unredeemed share, to the holder thereof, the sum of eight hundred dollars; and if the said Adolphe W. Martin shall also pay to the said corporation all fines and forfeitures that may be imposed upon or suffered by him under and by virtue of the constitution, by-laws, and regulations of the said the Hoboken Building Association, number one, then the above obligation to be void."

The execution of the bond and mortgage are admitted.

The first ground of defence is, that the complainants have sued by a wrong corporate name. The corporate name is erroneously stated, both in the bond and in the complainants' bill. But there is no question as to the identity of the person, nor that the complainants are the obligees in the bond. The defendant admits it, both in his answer and in his evidence. If the name given sufficiently designates the corporation the contract cannot be avoided for the misnomer. 1 *Penn.* 115, 501; *Inhabitants of Upper Alloways Creek* v. *String*, 5 *Halst.* 323; *Ang. and Ames on Corp.* § 647.

The objection to the bill is not raised by plea. The bill may be amended by inserting the true name of the corporation and introducing the proper averment, in pursuance of the motion made at the hearing.

The second ground of the defence is, that the corporation is dissolved, no officers having been duly elected according to the requirements of the constitution. But the stockholders compose the corporation, and a mere failure to elect officers at the time designated will not work a dissolution. *Ang. & Ames on Corp.* § 144, 771.

Nor will this court, in an action by the corporation against its debtor, look into the regularity or validity of the election of the corporate officers. That question cannot be thus tried collaterally. Where the fact of indebt-

edness is established, a very clear case should be made out to enable the debtor to escape liability on the ground that the corporation has ceased to exist.

The third ground of defence is, that the defendant is relieved from liability by reason of the refusal of other members of the corporation to pay their monthly dues. This defence rests upon the idea that, by the terms of the bond, the defendant is to continue to pay his monthly instalments until the surplus assets, after discharging all liabilities, are sufficient to pay to the holder of each unredeemed share the sum of $800, and that the failure of others to contribute necessarily postpones the accomplishment of that object, and thus unlawfully increases the extent of the defendant's liability. But the defendant's obligation to pay is absolute. By the terms of his bond, he assumes the hazard of all losses sustained by the corporation, either by fraud, accident, or the defalcation of its members. Every shareholder must of necessity incur that hazard. He cannot escape the hazard, nor can his liability to loss be diminished by entering into an obligation and giving security for the payment of his dues to the corporation.

The fourth ground of defence is, that the contract is usurious. The defendant, by the terms of his contract, engaged to pay for the use of the money received from the association far more than the legal rate of interest. But the contract was in accordance with the constitution of the association of which the defendant was a member. The money was not advanced by way of loan, but in redemption of the defendant's share, a mode of investment provided for by the constitution of the association authorized by the act of incorporation. It is declared by the statute that no premium given for priority of loan or acquisition of a building, or discount given on the redemption of shares, shall be deemed to be usurious. All contracts made under the authority of the statute are exempted from the operations of the statute against usury.

There is nothing in the objection, that the defendant did not receive the entire sum agreed to be paid to him for the redemption of his share, and for which the bond was given. The evidence shows that the usual deduction of five dollars was made to meet the expenses of searching the records and preparing the papers. But if the fact were otherwise, and the money had been wrongfully withheld in violation of the agreement of the parties as an additional premium for the advance of the money, it would not have tainted the obligation with usury. It formed no part of the contract upon which the money was advanced. *Executors of Howell* v. *Auten*, 1 *Green's Ch. R.* 45.

The last ground of defence is, that the affairs of the association are being wound up under circumstances which violate the contract of the defendant with the association and relieve him from liabilities upon his bond.

The association went into operation in the year 1852. By its constitution, the capital was derived from monthly contributions, and was invested in the redemption of the shares of members. The shares were not to exceed one hundred and fifty, and were to be extinguished or redeemed in ten years from the time the corporation was organized. The shares were redeemed at auction—the member accepting the least sum for his share being entitled to have his share redeemed and to receive its equivalent from the funds of the association. But though the share of a member was redeemed, his membership did not thereupon cease. But, by way of equalizing the advantage which he was supposed to have obtained by the redemption of his share, and the consequent use of a portion of the fund to compensate the members whose shares were unredeemed, he was to pay a higher rate of contribution till all the shares were redeemed or satisfied by the receipt of $800 each. The redeemed shares paid a monthly contribution of seven dollars, or eighty-four dollars per annum. The unredeemed shares paid a monthly contri-

bution of three dollars, or thirty-six dollars per annum. In 1855, there were forty-nine redeemed shares, each of which were bound to pay eighty-four dollars per annum. Their owners appear to have discovered that they were paying an extraordinary premium, or rate of interest, for their money. It was obviously their interest that the arrangement should be terminated, and as obviously the interest of the owners of the unredeemed shares that it should be continued. This gave rise to difficulty. The owners of the redeemed shares naturally felt that the operation of the contract was oppressive. It is in evidence that all or most of them, including the defendant, refused or neglected to pay their monthly contributions. The owners of many of the unredeemed shares thereupon refused to pay their monthly dues. An arrangement was thereupon entered into, by which it was agreed that the affairs of the institution should be wound up. The owners of the unredeemed shares were to receive in satisfaction of their claims the sums they had respectively advanced with interest. The owners of the redeemed shares who had given mortgages for the price of redemption were to be discharged from their obligations upon paying the amount of their mortgages with interest, being the sum which they had actually received from the association, less the amount of their monthly contributions. The arrangement was perfectly equitable, and was favorable to the mortgagors. The testimony is conflicting, but the decided weight of the evidence is, that the arrangement received the sanction of the corporation. However this may be, the proof is decided that it was assented to and approved by the defendant. Under this arrangement, fourty-four of the forty-nine unredeemed shareholders have been settled with and discharged from their mortgages. The defendant now insists that he was willing to pay his contributions, that the winding up of the affairs of the association was illegal, and that he is conse-

quently released from the obligation of his bond and mortgage.

The arrangement is either obligatory or inoperative and void. If it is inoperative, the defendant is left to the terms of his contract. The illegal conduct of the officers of the corporation will not relieve him from his obligation. By the constitution of the association and the terms of the mortgage deed he would be entitled to redeem only upon payment of all the future subscriptions on his shares until the dissolution of the society, its probable duration to be ascertained by calculation, and the future payments to be treated as if immediately due. *Mosley* v. *Baker*, 6 *Hare* 87; *S. C.* 27 *Eng. Law and Eq.* 512; *Fleming* v. *Telf. Ibid.* 490; *Farmer* v. *Smith*, 4 *Hurls. & Nor.* 196; *Seagrave* v. *Pope*, 1 *De Gex, MacN. & Gor.* 783; *S. C.* 15 *Eng. Law & Eq.* 477.

The same principle as applied to decrees of foreclosure was adopted by the master, and sanctioned by the Chancellor, in *Van Vorst* v. *Horsley*, to be found in Book of *Enrolled Decrees, E.* 4, *page* 626. It was also recognised and approved by the Chancellor in *Savings Association* v. *Vanderveer*, 3 *Stockt.* 387, although in that case the account of the monthly payments due from the mortgagor was directed to be taken only to the period of taking the account.

Independent of the arrangement for winding up the affairs of the association, the defendant would be bound to account according to the condition of his bond until the time fixed for the dissolution of the corporation. It is obvious that all the shares could not have been redeemed before that period. But the defendant is equitably entitled to the benefit of that arrangement, although he subsequently repudiated and refused to perform it. The complainants cannot object to a decree upon this basis, for they have acted upon it, and are proceeding to wind up the affairs of the corporation accordingly. It is in fact the only satisfactory and equitable method of dis-

posing of the question. It is obvious, from the evidence in the cause and from the statements of the defendant himself upon the hearing, that the whole controversy in this court has arisen from a trifling difference between the parties as to the sum actually due to the complainants upon the basis of the settlement. The whole difference was less than twenty dollars. It is exceedingly to be regretted that so much expense should have been incurred for so trifling an amount.

The complainants are entitled to the sum of $221.78, the amount reported by the cashier to be due from the defendant upon the basis of the settlement on the first of September, 1856, with interest from that date. No reference to a master is necessary. The amount can be agreed upon, or readily ascertained by calculation, and a decree will be made accordingly.